# EXHIBIT A

COURT OF COMMON PLEAS
Friday, March 14, 2025 3:30:46 PM
CASE NUMBER: 2025 CV 01578 Docket ID: 311820803
Mike Foley
CLERK OF COURTS MONTGOMERY COUNTY OHIO

## IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, OHIO

**DONALD KAHUT**      :  Case No. _____
**7237 Rivendell Circle**    :
**Dayton, Ohio 45459**    :
            :  (Judge _____)
**and**           :
            :
**CINDY KAHUT**       :  <u>COMPLAINT</u>
**7237 Rivendell Circle**    :
**Dayton, Ohio 45459**    :
            :
    **Plaintiffs,**    :
            :
**v.**            :
            :
**NVR, INC.**        :
**doing business as RYAN HOMES** :
**1974 Byers Road**     :
**Miamisburg, Ohio 45342**   :
            :
    **Also Serve:**    :
    **CORPORATION SERVICE CO.** :
    **Statutory Agent for NVR., Inc.** :
    **1160 Dublin Road, Suite 400** :
    **Columbus, Ohio 43215**  :
            :
**and**           :
            :
**JOHN DOES 1-10**     :
**Names and addresses currently unknown,** :
            :
    **Defendants.**    :

COME NOW Plaintiffs Donald Kahut and Cynthia Kahut ("Plaintiffs"), by and through counsel, and for their Complaint against Defendants NVR, Inc. d/b/a Ryan Homes ("Ryan Homes") and John Does 1-10 ("John Does") (collectively "Defendants"), state, aver, and allege as follows:

1.  At all times relevant herein, Plaintiffs were and are residents of Montgomery County, Ohio.

2. Upon information and belief, at all times relevant hereto, Ryan Homes is a Virginia corporation registered to do business in Ohio.

3. Ryan Homes regularly transacts business throughout the State of Ohio and in Montgomery County, Ohio. Ryan Homes also maintains a general office in Montgomery County, at 1974 Byers Road Miamisburg, OH 45342.

4. John Does 1-10 are agents, employees, representatives, individuals, contractors, subcontractors, and/or entities who performed construction services on Plaintiffs' residence and/or were involved in transactions that are the subject of this Complaint. The identity of Defendants John Does 1-10 are presently unknown to Plaintiffs. Their identities are within the knowledge and control of Defendants. As their identities become known, Plaintiffs will add their proper names to the pleadings.

5. This Court has personal jurisdiction over Plaintiffs and Defendants.

6. This Court has subject matter jurisdiction over this matter because it involves construction of a home in Montgomery County, Ohio, and Plaintiffs' claims and requests for relief fall within the jurisdiction of this Court.

7. Venue is proper in Montgomery County, Ohio because, among other things, (a) the parties entered into an agreement in Montgomery County, Ohio for the construction of a home in Montgomery County; and (b) Ryan Homes maintains a business address in Montgomery County, Ohio.

**BACKGROUND**

8. Plaintiffs restate and incorporate by reference the preceding paragraphs of their Complaint as if fully restated herein.

2

9. On or about September 30, 2023, Plaintiffs and Ryan Homes entered into a Purchase Agreement under which Ryan Homes agreed to construct and sell a new home (the "Home") to Plaintiffs. Pursuant to Civil Rule 10(D), a copy of the Purchase Agreement, its addenda, and all of the respective terms and specifications (collectively "the Agreement") are not attached to this Complaint because they are in the possession of Ryan Homes. Under the Agreement, Ryan Homes agreed and represented it would perform construction and other services in accordance with the Agreement and addenda terms.

10. Under the Agreement, Plaintiffs agreed to purchase and Ryan Homes agreed to build the Home as a Cumberland model home, set/version CMB00-01 on Lot No. 39, Section No. 1 in the Rivendell Subdivision.

11. Ryan Homes represented to Plaintiffs that it possessed the requisite skills and qualifications to perform the construction services under the Agreement.

12. Plaintiffs agreed to pay Ryan Homes $510,870.00 for the construction services specified in the Agreement.

13. The Agreement was scheduled to close on March 15, 2024. In a walkthrough prior to closing, Plaintiffs pointed out concerns related to uneven areas in the basement floor, but Ryan Homes assured them that there was no cause for concern and that the unevenness was caused by rolled up carpet padding.

14. At the time of those assurances, Ryan Homes knew that its statements were false and that the Home suffered from serious, latent defects in the slab. Despite its full knowledge, Ryan Homes both concealed and made affirmative misrepresentations concerning those defects to induce Plaintiffs to close on the transaction on March 15, 2024.

3

15. On March 15, 2024, based on Ryan Homes' representations and without knowledge of the defects that were both misrepresented and concealed by Ryan Homes, Plaintiffs proceeded to close the purchase transaction of the Home (the "Settlement Date"). They closed in reliance on (a) Ryan Homes' representations concerning the uneven floor; (b) Ryan Homes having constructed the Home in accordance with the Agreement, all specifications, and all applicable building codes and industry standards; and (c) Ryan Homes would stand by the Home it constructed and the warranty and other agreements it gave for the benefit of Plaintiffs.

16. On the Settlement Date, Plaintiffs paid $518,415.00 for the construction services specified in the Agreement.

17. After the Settlement Date, Plaintiffs learned (among other things) that Ryan Homes had misrepresented the issue concerning the slab and that the Home was not constructed in accordance with the Agreement, the specifications, the applicable building codes and industry standards and, in fact, it was defective and that Ryan Homes had full knowledge of those defects prior to the Settlement Date.

18. For example, after the Settlement Date, Plaintiffs promptly again notified Ryan Homes about the extremely unlevel basement floor, expressing concerns that it was not due to the rolled up padding as Ryan Homes had represented and that it may be the slab itself, which is not observable to the naked eye.

19. Plaintiffs showed Project Manager, Ian Dickey, the areas of concern and expressed concerns about the slab itself, which was underneath carpet. Mr. Dickey advised that he would have to check on the requirements/specifications related to the slab.

20. Over several days, the parties discussed the requirements and warranty related to the slab. At one point, Plaintiffs were initially told the warranty covered unevenness over ¼ inch

4

in a 10 ft span only to be told later it covered unevenness over ¼ inch in a 32 inch span. Based on this information, there were multiple areas that did not meet the requirements.

21. After demonstrating the extent of the unevenness to Mr. Dickey, Plaintiffs were instructed to open a warranty claim.

22. Plaintiffs opened a warranty claim (the "Warranty Claim") related to the basement floor/slab.

23. After the Settlement Date, Ryan Homes Warranty Manager, Chris Trammell, advised Plaintiffs, to their surprise, that he had documented the uneven slab and raised this issue to the production team **prior** to the Settlement Date. Mr. Trammell advised Plaintiffs that the production team told him the house was built to spec, notwithstanding the defect in the slab, which was known to Ryan Homes but not to Plaintiffs.

24. On or about April 17, 2024, Mr. Trammell visited the Home in person and advised the Plaintiffs of the following:

  a. That he had documented the slab issue prior to the closing date but was told by the production team that the house was built to spec;

  b. That its proposed solution was to "grind" out the unevenness; that the foundation was settling severely, likely due to the ground being frozen when the slab was poured;

  c. That Ryan Homes was unwilling to tear up the foundation and repour it;

  d. That Ryan Homes would not have modified its schedule even if a request had been made to delay the slab pour until the temperature was above freezing; and

  e. That the slab was only cosmetic and not structural.

5

25. When the basement carpet was pulled back to observe the slab, numerous cracks were revealed under the carpet.

26. Not trusting what Ryan Homes was communicating, Plaintiffs contacted concrete contractors who advised them that:

     a. a laser needed to be put on the slab and if there was over a one-inch variance anywhere in the floor, the slab needed to be removed and repoured;

     b. there were major issues with the slab that would likely result in long term issues;

     c. Ryan Homes should be consulting its concrete subcontractor to investigate the characteristics of the concrete to determine if there were issues with the concrete itself or if the concrete was not acceptable for the conditions;

     d. The more grinding that is done, the more the structural integrity of the slab is compromised;

     e. Grinding a slab that is already at or near minimum thickness requirements would jeopardize the integrity of the slab further;

     f. Grinding the slab would result in a slab thickness that did not meet code requirements; and

     g. There were insufficient control joints in the slab, and the control joints that were present were not deep enough.

27. Plaintiffs requested a meeting with Mr. Dickey, Mr. Trammell, Andy Crosthwaite (Production Manager), and Brandon Krupp (Warranty Manager) to discuss the issue.

28. Plaintiffs met with the Ryan Homes Production and Warranty Teams at the Home. The parties used a laser and determined that the slab did not meet the applicable codes and required specifications for evenness. Ryan Homes agreed and acknowledged that the slab did not meet those

specifications. In fact, one Ryan Homes' representative stated that "[Ryan Homes has] mud on [its] face with this home."

29.    Additionally, at least one company conducted a structural assessment of the concrete slab at the Home and determined  that (a) the slab did not meet the American Concrete Institute recommendations for maximum deviation in a floor; and (b) to properly assess slab thickness and identify any voids beneath the slab, the entire slab would have to be scanned by radar.  Pursuant to Civil Rule 10(D), a copy of the related June 10, 2024 report is in Ryan Homes' possession and is, therefore, not attached

30.    After Plaintiffs and Ryan Homes agreed to have a ground penetrating radar test ("GPRT") performed, Plaintiffs discussed the GPRT with Ryan Homes' production manager. The production manager tried to convince Plaintiffs to only spot check the slab because the test would take a lot of time.

31.    Plaintiffs insisted on a GPRT of the entire slab.  The production manager stated that he expected there to be spots in the slab that did not meet the code requirements. Plaintiffs advised Ryan Homes' production manager that, if the GPRT confirmed that the Home was not built to code requirements and specifications, they would request to rescind the purchase.

32.    On or about July 17, 2024, a GPRT was performed by GPRS, finding that the slab was defective and did not meet the applicable code thickness requirements. Specifically, the applicable code requires 3 ½ inch slab thickness and the majority of the Home slab was only 2 ½ inches thick. Pursuant to Civil Rule 10(D), a copy of the July 17, 2024 GPRS report is in Ryan Homes' possession and is, therefore, not attached.

33.     Following the results of the GPRT, the production manager advised that Plaintiffs and Ryan Homes would need to discuss a way forward given the results. Plaintiffs advised that they wanted to rescind the purchase.

34.     On or about August 7, 2024, Ryan Division Manager, Paul Wishnok, came to the Home to inspect the slab. Upon completion of his inspection of the slab, he indicated that the slab could not be repaired and it needed to be replaced. Plaintiffs asked how this could happen when Ryan Homes had built this same model of homes many times. Mr. Wishnok replied "I don't know". Mr. Wishnok indicated Ryan Homes would replace the slab at this time. Plaintiffs again stated their intent to seek rescission of the purchase.

35.     On or about September 17, 2024, based on the results of the GPRT, Plaintiffs sent a Notice of Defects letter to Ryan Homes pursuant to R.C. 1312.04, demanding rescission of the purchase.

36.     Among other things, Plaintiffs expressed concerns that any effort to remove the slab would put a strain on the foundation walls and footers, causing further structural damage to the home. Plaintiffs also indicated that the Home cannot be repaired or restored to the condition Ryan Homes represented (and the parties' agreed) and that this condition would seriously impact future marketability considerations.

37.     Ryan Homes responded to Plaintiffs' letter, denying Plaintiffs' request for rescission.

38.     Plaintiffs have complied with all requirements set forth in R.C. 1312.04 prior to commencing suit.

39.     The parties made significant attempts to resolve this dispute, with the express acknowledgment that the passage of time would not alter Plaintiffs' rights for rescission or other relief.

40.     At the time of the filing of this Complaint, Ryan Homes has indicated that it would not insist on any mediation requirement under the Agreement.

41.     Plaintiffs have additional open warranty claims that have been timely submitted through Ryan Homes' claims process, but have yet to be resolved. Plaintiffs specifically reserve the right to assert any and all claims related to the open warranty claims if these are not resolved to their satisfaction.

## COUNT I – BREACH OF CONTRACT

42. Plaintiffs restate and incorporate by reference the preceding paragraphs of their Complaint as if fully restated herein.

43. Plaintiffs and Ryan Homes entered into a contractual relationship under which Ryan Homes agreed to provide and perform the services outlined in the Agreement in exchange for payment from Plaintiffs.

44. Plaintiffs have performed in accordance with the terms of the Agreement and have not breached the Agreement.

45. Ryan Homes has breached the Agreement by (a) delivering a Home that is defective and does not meet the applicable specifications and building code; (b) not otherwise completing the work as agreed under the terms of the Agreement; and/or (c) furnishing labor and materials that were substandard, defective, improper, and unworkmanlike, which has resulted in additional and ongoing damages to Plaintiffs' home.

46. Among other things, Defendants have failed to complete the work in a workmanlike manner, failed to use proper materials, failed to follow the plans and specifications of the Agreement and/or the applicable building code, and failed to disclose to Plaintiffs prior to closing the defects known to Defendants and not Plaintiffs.

47. Defendants' defective labor and materials has resulted in additional ongoing and permanent damage to the Home and property.

48. As a direct and proximate cause of Defendants' breach, Plaintiffs have been injured, suffered damages, and are entitled to rescission of the Agreement and compensation in an amount in excess of $25,000.00, plus pre- and post-judgment interest and costs.

## COUNT II – BREACH OF EXPRESS WARRANTIES

49. Plaintiffs restate and incorporate by reference the preceding paragraphs of their Complaint as if fully restated herein.

50. Ryan Homes provided an express limited warranty on the Home, which was incorporated into the Agreement.

51. Ryan Homes breached the express warranty on the Home.

52. As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs have been injured, suffered damages and are entitled to rescind the contract and/or to compensation in an amount in excess of $25,000.00, including actual damages, pre- and post-judgment interest, attorney fees and costs.

## COUNT III – NEGLIGENCE

53. Plaintiffs restate and incorporate by reference the preceding paragraphs of their Complaint as if fully restated herein.

54. Defendants had a duty to perform construction services in a workmanlike manner.

55. Defendants failed to perform the construction services in a workmanlike manner.

56. Defendants are liable for the negligent performance of services as described above.

57. Defendants failed to take reasonable care for the construction services undertaken and are therefore liable for its negligence performance and the harm/damages caused to Plaintiffs.

58. As a direct and proximate result of Defendants' negligence, Plaintiffs have been injured, suffered damages and are entitled to rescind the contract and/or to compensation in an amount in excess of $25,000.00, including actual and punitive damages, pre- and post-judgment interest, attorney fees and costs.

## COUNT IV - VIOLATION OF HOME CONSTRUCTION CONSUMER SUPPLIERS ACT

59. Plaintiffs restate and incorporate by reference the preceding paragraphs of their Complaint as if fully restated herein.

60. The Home Construction Consumer Suppliers Act ("HCCSA"), R.C. 4722.01, *et seq.*, provides statutory relief for homeowners injured or damaged by the deceptive or fraudulent practices of a supplier of construction services.

61. Plaintiffs and Ryan Homes entered into a "home construction services agreement" as defined under R.C. 4722.01 et seq.

62. The HCSSA explicitly prohibits unfair practices by a supplier including, but not limited to:

    a.   Falsely representing the nature and/or status of any repairs or work;

    b.   Failing to perform the construction in a workmanlike manner; and

    c.   Intentionally misrepresenting any part of the transaction, or the nature or quality of the work or materials.

11

63. By failing to perform the construction at the Home in a workmanlike manner, Defendants have violated the provisions of R.C. 4722.03 *et seq*.

64. By misrepresenting the nature of the construction services, quality of work and the materials used in the construction, Defendants have violated the provisions of R.C. 4722.03 *et. seq*.

65. As a direct and proximate result of Defendants' aforementioned unfair practices, Plaintiffs have been injured, suffered damages, and are entitled to rescind the contract, recover damages, including direct, incidental, or consequential pecuniary losses and attorney's fees, all statutory relief available, pre- and post-judgment interest and costs in an amount in excess of $25,000.00.

## COUNT V - FRAUDULENT MISREPRESENTATION AND FRADULENT CONCONCEALMENT

66. Plaintiffs restate and incorporate by reference the preceding paragraphs of their Complaint as if fully restated herein.

67. Defendants made false representations to Plaintiffs, with knowledge of their falsity, to induce Plaintiffs' reliance on those statements, and which in fact induced Plaintiffs' reliance to their detriment.

68. Specifically, after the closing, Plaintiffs learned that Defendants possessed information that the slab did not meet requirements prior to the closing, but concealed that information from Plaintiffs prior to closing.

69. Further, after the closing, Plaintiffs learned that Defendants possessed information that the slab did not meet requirements prior to the closing, but made misrepresentations to Plaintiffs regarding the defect.

12

70. Further, after the closing, Plaintiffs learned that Defendants possessed information that the slab was poured with diluted concrete materials under inappropriate conditions, resulting in a knowingly defective slab that was not disclosed to Plaintiffs.

71. But for Defendants' fraudulent misrepresentations and concealment regarding the slab issues, Plaintiffs would not have agreed to close on the Home.

72. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs have been injured, suffered damages and are entitled to rescind the contract and/or to compensation in an amount in excess of $25,000.00, including actual and punitive damages, pre- and post-judgment interest, attorney fees and costs.

## COUNT VI – PROMISSORY ESTOPPEL

73. Plaintiffs restate and incorporate by reference the preceding paragraphs of their Complaint as if fully restated herein.

74. As a result of Defendants' promise to perform services, Plaintiffs took various actions and incurred various expenses.

75. Plaintiffs have been damaged as previously described due to reliance upon Defendants' promises, which were untrue.

76. As a direct and proximate result of Defendants' conduct, Plaintiffs have been injured, suffered damages and are entitled to rescind the contract and/or to compensation in an amount in excess of $25,000.00, including actual and expectation damages, pre- and post-judgment interest, attorney fees and costs.

## COUNT VII – NEGLIGENT HIRING AND SUPERVISION

77. Plaintiffs restate and incorporate by reference the preceding paragraphs of their Complaint as if fully restated herein.

78. To the extent the labor and materials were furnished by third-parties, Defendants had a duty to supervise and train those third parties, including all of its agents, subcontractors, and employees.

79. At all times relevant to this action, Defendants failed to properly hire, supervise, or train those third parties and/or its agents, subcontractors, and employees.

80. As a direct and proximate result of Defendants' negligent hiring and supervision, Plaintiffs have been injured, suffered damages and are entitled to rescind the contract and/or to compensation in an amount in excess of $25,000.00, including actual and punitive damages, pre- and post-judgment interest, attorney fees and costs.

## COUNT VIII – BREACH OF IMPLIED WARRANTIES

81. Plaintiffs restate and incorporate by reference the preceding paragraphs of their Complaint as if fully restated herein.

82. The aforesaid errors, omissions, mistakes, failure to supervise, negligent hiring, substandard workmanship, oversight, inspections, selection of materials and deficiencies of Defendants constitute a breach of implied warranty of workmanship and craftsmanship of Defendants. The residence was not constructed or remodeled by Defendants in a manner fit and satisfactory for the purpose intended.

83. As a direct and proximate result of Defendants' breach of implied warranties, Plaintiffs have been injured, suffered damages and are entitled to rescind the contract and/or to compensation in an amount in excess of $25,000.00, including actual damages, pre- and post-judgment interest, attorney fees and costs.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

    a.  For an order rescinding the Agreement and requiring restitution of the full purchase price to Plaintiffs;

    b.  For Plaintiffs' direct, incidental, or consequential pecuniary losses related to the Agreement;

    c.  For Plaintiffs' pre- and post-judgment interest, costs, expenses and reasonable attorney's fees;

    d.  For punitive damages;

    e.  For such further relief to which this Court deems just and proper, whether at law or in equity.

Respectfully submitted,

FLAGEL & PAPAKIRK LLC

/s/ *Michelle A. Cheek*
Michelle A. Cheek (0086476)
James Papakirk (0063862)
50 E. Business Way, Suite 410
Cincinnati, OH 45241
Telephone: (513) 984-8111
Fax: (513) 984-8118
mcheek@fp-legal.com
jpapakirk@fp-legal.com
*Attorneys for Plaintiffs Donald Kahut and Cynthia Kahut*

## REQUEST FOR CERTIFIED MAIL SERVICE

TO THE CLERK: Please serve Defendants by certified mail, return receipt requested at the addresses listed on the caption hereof.

/s/ *Michelle A. Cheek*
Michelle A. Cheek (0086476)

15

COURT OF COMMON PLEAS
Friday, March 14, 2025 3:30:46 PM
CASE NUMBER: 2025 CV 01578 Docket ID: 284833779
Mike Foley
CLERK OF COURTS MONTGOMERY COUNTY OHIO

## MONTGOMERY COMMON PLEAS COURT / GENERAL DIVISION
## CIVIL CASE INFORMATION

This document has been automatically generated by the Electronic Filing System

| PARTICIPANT NAME | TYPE | ATTORNEY FOR PARTY |
|---|---|---|
| DONALD KAHUT | MAIN PLAINTIFF | CHEEK |
| NVR INC. | MAIN DEFENDANT | |

| CATEGORY | VALUE |
|---|---|
| CASE TYPE | Civil |
| JURY DEMAND | No |
| PRAYER AMOUNT | 25001 |
| ACTION TYPE | CIVIL ALL OTHER |
| TYPE OF RESOLUTION | |
| PARCEL NUMBER (MORTGAGE FORECLOSURE ONLY) | |

### REFILING INFORMATION

| CASE NUMBER | JUDGE | MAIN PLAINTIFF | MAIN DEFENDANT |
|---|---|---|---|

### SUITS INVOLVING LIKE ISSUES AND SIMILAR PARTIES

| CASE NUMBER | JUDGE | MAIN PLAINTIFF | MAIN DEFENDANT |
|---|---|---|---|

The Filer submitted this information and the document was generated.
Filer: MICHELLE CHEEK

COURT OF COMMON PLEAS
Friday, March 14, 2025 3:30:46 PM
CASE NUMBER: 2025 CV 01578 Docket ID: 810144802
Mike Foley
CLERK OF COURTS MONTGOMERY COUNTY OHIO

MIKE FOLEY
MONTGOMERY COUNTY CLERK OF COURTS
41 N. PERRY STREET, DAYTON, OHIO 45422

## INSTRUCTIONS FOR SERVICE

DONALD  KAHUT
**PLAINTIFF/PETITIONER**


NVR INC.
**DEFENDANT/RESPONDENT**

**PLEASE ISSUE SERVICE TO:** (Name and Address)
CINDY  KAHUT
7237 RIVENDELL CIRCLE
DAYTON, OH  45459

DONALD  KAHUT
7237 RIVENDELL CIRCLE
DAYTON, OH  45459

NVR INC.
1974 BYERS ROAD
MIAMISBURG, OH  45342

**VIA:** Service by Clerk

**SERVICE PROVIDER:** USPS Certified Mail Service

**TO BE SERVED** (List all Documents to be Served)
Complaint

**Electronically Requested by:** MICHELLE CHEEK

2025-03-14T16:26:39.76
CASE NUMBER: 2025 CV 01578 Docket ID: 270865874
MIKE FOLEY
CLERK OF COURTS MONTGOMERY COUNTY OHIO

# IN THE COURT OF COMMON PLEAS, MONTGOMERY COUNTY OHIO
## CIVIL DIVISION

# SUMMONS

**PLAINTIFF**

DONALD KAHUT et al

**VS**

**DEFENDANT**

NVR INC. et al

**CASE NUMBER**

2025 CV 01578

**ARTICLE NUMBER**

9414726699042238575119

**TO THE FOLLOWING NAMED DEFENDANT:**

NVR INC.
1974 BYERS ROAD
MIAMISBURG OH 45342

You have been named a Defendant or Respondent in a complaint filed in Montgomery County Court of Common Pleas, Dayton, Ohio. **A copy of the Complaint is attached.**

**BY:**

DONALD KAHUT
7237 RIVENDELL CIRCLE
DAYTON, OH 45459

**PLAINTIFF ATTORNEY:**

MICHELLE CHEEK
50 E BUSINESS WAY
SUITE 410
CINCINNATI, OH 45241

You are hereby summoned and required to serve upon the Plaintiff's attorney, or upon the Plaintiff, if the Plaintiff does not have an attorney, a copy of an **Answer to the Complaint** within **28 days after receipt of this summons, exclusive of the day you received the summons.** Your original **Answer** must be filed with the Clerk of Court's Office **within 3 days** after you serve the Plaintiff's attorney or Plaintiff.

**If you fail to appear and defend, Judgment by Default may be rendered against you granting Plaintiff(s) the relief demanded in the Complaint.**

**NOTE:**

If you are represented by an attorney, your attorney is required to electronically file your Answer through the Court's authorized electronic filing system. See Montgomery County Common Pleas Court Loc. R. 1.15, Electronic Filing of Court Documents, for requirements of electronic filing. Local rules can be accessed at www.montcourt.oh.gov. Service of the Answer will be made upon the Plaintiff's attorney through the Court's authorized electronic filing system. If the Plaintiff does not have an attorney, your attorney is required to serve a paper copy of your Answer to the Plaintiff.

If you are representing yourself (appearing pro se), you have the option to file your Answer in paper OR through the Court's authorized electronic filing system (See Loc. R. 1.15, Electronic Filing of Court Documents). Local rules can be accessed at www.montcourt.oh.gov. If you file your Answer in paper, you are required to serve a paper copy of your Answer to the Plaintiff's Attorney or the Plaintiff. If you file your Answer electronically, service of the Answer will be made upon the Plaintiff's attorney through the Court's authorized electronic filing system. If the Plaintiff does not have an attorney, you are required to serve a paper copy of your Answer to the Plaintiff.



/s/ **MIKE FOLEY, ISSUED Friday, March 14, 2025**

**MIKE FOLEY, CLERK**

**COURT OF COMMON PLEAS**

**MONTGOMERY COUNTY, OHIO**

**PREPARED ELECTRONICALLY**

**In The Court Of Common Pleas, Montgomery County Ohio**
**Civil Division**

**RETURN OF SERVICE SUMMONS**

| PLAINTIFF | CASE NUMBER |
|---|---|

DONALD KAHUT et al

2025 CV 01578

**VS**

| DEFENDANT | ARTICLE NUMBER |
|---|---|

NVR INC. et al

9414726699042238575119

**TO THE FOLLOWING NAMED PARTY:**
NVR INC.
1974 BYERS ROAD
MIAMISBURG, OH 45342

### RETURN OF SERVICE(PERSONAL)

**FEES**

SERVICE $_____

MILEAGE _____

TOTAL $_____

DATE _____

I received the document on _____, 2025, at ____ o'clock ____ M. and made personal service of it upon _____ by locating him/them and tendering a copy of the document and accompanying documents, on _____, 2025.

By _____

### RETURN OF SERVICE(RESIDENCE)

**FEES**

SERVICE $_____

MILEAGE _____

TOTAL $_____

DATE _____

I received the document on _____, 2025, at ____ o'clock ____ M. and made residence service of it upon _____ by leaving, at his/their usual place of residence with _____ a person of suitable age and discretion then residing therein a copy of the complaint and accompanying documents, on _____, 2025.

By _____

### RETURN OF SERVICE(FAILURE OF SERVICE)

**FEES**

SERVICE $_____

MILEAGE _____

TOTAL $_____

DATE _____

I received the document on _____, 2025, at ____ o'clock ____ M. with instructions to make personal/residence service upon _____ and I was unable to serve a copy documents upon him/them for the following reasons: _____

By _____

PAGE INTENTIONALLY LEFT BLANK



**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type:
☒ Certified Mail

**Reference Information**

9 414 7266 9904 2238 5751 19

Return Receipt (Form 3811) Barcode

Article Addressed to:

NVR INC.
1974 BYERS ROAD
MIAMISBURG, OH 45342

2025 CV 01578

Certified Mail (Form 3800) Article Number

9434 7266 9904 2238 5751 19



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

USPS TRACKING #

9590 9266 4904 2236 5751 12

United States
Postal Service®

● Sender: Please print your name, address and ZIP+4® below

MIKE FOLEY
MONTGOMERY COUNTY CLERK OF COURTS
41 N PERRY STREET
DAYTON OH 45422

FILED
COURT OF COMMON PLEAS

2025 MAR 21 PH 3: 4

CLERK OF COURTS
MONTGOMERY CO. OHIO